Filed:  February 16, 2012

IN THE SUPREME COURT OF THE STATE OF OREGON

FRED GIROD,
ROD MONROE, and DAVID SCHAMP,

Petitioners,

v.

JOHN R. KROGER,
Attorney General,
State of Oregon,

Respondent.

(SC S059996)

En Banc

On petition to review ballot title filed December 22, 2011, considered and under advisement January 25, 2012.

Gregory A. Chaimov, Davis Wright Tremaine LLP, Portland, filed the petition and reply memorandum for petitioners.

Jeff J. Payne, Assistant Attorney General, Salem, filed the answering memorandum for respondent.  With him on the answering memorandum were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

BALMER, J.

The ballot title is referred to the Attorney General for modification.

BALMER, J.

Petitioners seek review of the Attorney General's certified ballot title for Initiative Petition 26 (2012), arguing that the ballot title does not satisfy the requirements of ORS 250.035(2). We review a certified ballot title to determine whether it substantially complies with those statutory requirements. *See* ORS 250.085(5) (stating standard of review). For the reasons that follow, we refer the ballot title to the Attorney General for modification.

Initiative Petition 26 would amend a number of statutory provisions pertaining to the commercial harvest and sale of fish caught in Oregon waters. As we recently noted in reviewing the ballot title for a different initiative petition concerning commercial fishing, those statutes "exist as part of a complex web of laws," including an interstate compact between Oregon and Washington, statutes and regulations of both states, federal law, treaties with Native American tribes, and various court orders. *Girod v. Kroger*, 351 Or 389, 392, ___ P3d ___ (2011). We summarized those legal authorities in *Girod*, *id*. at 392-94, and will not repeat that discussion here, except as required to address petitioner's arguments.

Initiative Petition 26 begins with several "findings" concerning the state of wild salmon and steelhead runs in Oregon, the role of gillnets in the decline of those fish populations, and the benefits of banning the use of gillnets. Section 2 would amend ORS 508.775 to make it unlawful "to use a gillnet to take salmon, steelhead, or other fish in the inland waters of the state of Oregon." It also would amend that statute to prohibit any "wholesaler, canner or buyer" from buying any fish taken by gillnet from Oregon's inland

1

waters. Section 2 would exempt from those prohibitions persons fishing pursuant to tribal fishing rights. Section 3 provides that the proposed measure does not affect the interstate compact, "fishing management agreements between the United States, Indian tribes and states," or "[a]ny tribal fishing rights [or] the right to use any fishing gear in furtherance of tribal fishing rights[.]" Section 4 defines "gillnet" and "[i]nland waters." Section 5 would amend ORS 508.775 to eliminate the requirement that three members of the Oregon Commercial Fishery Permit Board be representatives of the Columbia River gillnet salmon fishing industry. The remaining sections make conforming changes to various other statutes.

The Attorney General certified the following ballot title for Initiative Petition 26:

**"Eliminates Oregonians' Columbia River non-tribal commercial fishing; prohibits Oregonians' purchase of non-tribal Columbia River fish**

"**Result of 'Yes' Vote:** 'Yes' vote eliminates non-tribal Oregon, but not Washington, commercial fishing in Columbia River; prohibits Oregonians from buying fish caught in Columbia River by non-tribal persons.

"**Result of 'No' Vote:** 'No' vote retains laws allowing non-tribal commercial fishing in Columbia River by Oregon/Washington fishers; retains laws allowing Oregonians to purchase non-tribal Columbia River fish.

"**Summary:** Currently, Oregon and Washington commercial fishers may catch salmon in the Columbia River only with gillnets. Current law allows 'wholesaler, canner or buyer' to purchase or receive salmon/other fish caught with gillnets; allows issuance of up to 200 Columbia River gillnet fishing permits, allows renewing and transferring current permits. Measure eliminates non-tribal Oregon commercial fishing for salmon/other fish by banning gillnets in Oregon's 'inland waters' (defined), including the

2

Columbia River.  Washington-permitted commercial fishers may continue fishing with gillnets on Columbia River.  Measure prohibits Oregonians from purchasing non-tribally caught fish taken from Columbia River or other Oregon 'inland waters'; repeals current laws governing Columbia River commercial gillnet fisheries.  Measure does not affect tribal fishing rights or tribal rights to use gillnets.  Other provisions."

Petitioners challenge each part of the ballot title.  As to the caption, petitioners assert first that the caption does not reasonably identify the "subject matter" of the proposed measure as required by ORS 250.035(2)(a).  Petitioners argue that the proposed measure would "ban the use of one type of commercial fishing gear -- gillnets -- currently being used in Oregon's inland waters, including in non-tribal Columbia River commercial fisheries."  They contend that the caption fails to identify that subject because it inaccurately states that the proposed measure would eliminate *all* Oregon non-tribal commercial fishing in the Columbia River.  Petitioners note that "non-tribal commercial fishing for *non-salmon* species is currently taking place and is legal in the Columbia River."  (Emphasis added.)  Similarly, petitioners argue that the caption is inaccurate in stating that the proposed measure would prohibit the purchase of all nontribal Columbia River fish, when the prohibition applies only to *gillnet*-caught fish and not fish caught by other means.  Petitioners also assert that the reference in the caption to the Columbia River is inaccurate because the ban on the use of nontribal commercial gillnets applies in all Oregon inland waters.  They acknowledge, however, that the "principal change" that the measure proposes is to ban such fishing in Oregon, "particularly the Columbia River."

The Attorney General responds that gillnets are the only current legal

3

method for commercial salmon fishing in the Columbia River and, therefore, banning that gear "eliminates commercial fishing for Oregon fishers in the Columbia River[.]" In support of that statement, the Attorney General cites statutes that limit commercial salmon and sturgeon fishing in the Columbia River except by gillnets and that prohibit commercial steelhead fishing. Although he acknowledges that some small amount of commercial fishing for other species or in other waters has been or could be permitted, he argues that the certified caption accurately states the "actual major effect" of the proposed measure and thus identifies its "subject matter." *See Terhune v. Myers*, 342 Or 475, 479-80, 154 P3d 1284 (2007) (stating that test); *see also Pelikan/Tauman v. Myers*, 342 Or 383, 389, 153 P3d 117 (2007) ("[W]hen the effects of a measure are not reasonably subject to dispute, the Attorney General may (and sometimes must) go beyond the terms of the measure and mention those effects in the ballot title." (Citation omitted.)).

We agree, at least in part, with petitioners. The proposed measure would change Oregon law -- specifically ORS 508.775(1), which currently allows the commercial use of gillnets in some circumstances -- to make it unlawful "to use a gillnet to take salmon, steelhead, or other fish in the inland waters of the state of Oregon." The Attorney General may be correct that the most significant practical impact of the proposed measure would be on commercial salmon fishing in the Columbia River, although we are not in a position, given the record before us, to agree or disagree with that proposition. And we agree that it is the Attorney General's task to describe the "actual major effect" of a proposed measure, *Terhune,* 342 Or at 480, and not simply the wording changes that the proposed measure will make to current statutes. That said, the

4

certified caption here, in our view, both overstates and understates the effect that Initiative Petition 26 would have on existing law.

The caption overstates the effect of the proposed measure by asserting that it would eliminate "non-tribal commercial fishing." Petitioners argue, and the Attorney General does not appear to disagree, that some commercial fishing -- of some species, in some Oregon waters, using some gear -- has occurred or is occurring now and that it would not be prohibited by Initiative Petition 26. Accordingly, the reference in the caption to the "elimination" of nontribal commercial fishing must be changed. The caption also refers to only the Columbia River and thus understates the scope of the proposed measure, which would ban nontribal commercial gillnetting of all fish in all Oregon "inland waters." That description, too, must be changed. We reject without discussion petitioners' other challenges to the caption.

Petitioners next assert that the "yes" and "no" vote result statements do not substantially comply, respectively, with the requirements of ORS 250.035(2)(b) and ORS 250.035(2)(c) because they do not accurately describe "the result if the state measure is approved" or "the result if the state measure is rejected." Petitioners first argue that the "yes" statement shares the defects of the caption because it states that a "yes" vote "eliminates non-tribal Oregon * * * commercial fishing in Columbia River." Petitioners contend, as discussed above, that the proposed measure eliminates commercial gillnetting, but does not eliminate all commercial fishing, and that the proposed measure applies to all Oregon inland waters, not only the Columbia River. They make similar arguments with respect to the "no" vote result statement. For the reasons set out above,

5

we agree. The "yes" and "no" result statements must be changed in those respects. We reject without discussion petitioners' other challenges to the "yes" and "no" result statements.

Finally, petitioners challenge the summary on several grounds. We agree with petitioners that the summary must be modified in two ways. First, for the reasons discussed above, the summary is overbroad and inaccurate in stating that the proposed measure "eliminates" nontribal Oregon commercial fishing. Second, the summary is inaccurate in stating that the proposed measure "prohibits Oregonians from purchasing non-tribally caught fish taken from Columbia River or other Oregon 'in-land waters,'" because at least some fish caught by nongillnet means may be purchased by Oregonians. The summary thus does not accurately state the "effect" of the proposed measure as required by ORS 250.035(2)(d) and must be referred to the Attorney General for modification. We reject without discussion petitioners' other challenges to the summary.

The ballot title is referred to the Attorney General for modification.

6